UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ABELARDO AVILEX CARBAJAL, SANTA D. CARBAJAL and MAX CARBAJAL | CIVIL ACTION |
| VERSUS | CASE NO.: _____ SECTION: _____ |
| JERRY LARPENTER, TERREBONNE PARISH SHERIFF; NARCOTICS AGENT DALLAS BOOKENBERGER, NARCOTICS AGENT TRAVIS SANFORD and NARCOTICS AGENT JOSEPH RENFRO | JURY TRIAL REQUESTED |

# COMPLAINT

Abelardo Avilex Carbajal, Santa D. Carbajal and Max Carbajal, all persons of the full age of majority and domiciled in Terrebonne Parish, Louisiana, respectfully state:

## JURISDICTION

This Court has federal question jurisdiction pursuant to the 4th, 5th, and 14th amendments of the United States Constitution; 28 USC §1331; and 42 USC §1983. Defendants, narcotics agents operating under color of state and federal statutes, regulations, customs and practices as deputized agents of the Terrebonne Parish Sheriff, deprived the petitioners of their Constitutional rights to be free from bad faith police misconduct which deprived them of their liberty, dignity and property without due process of law.

In addition, this Court has subject matter jurisdiction of the pendant state law claims asserted by petitioners.

1.

Made defendants herein are the following:

A. Jerry Larpenter, in his capacity as duly elected Sheriff of Terrebonne Parish, Louisiana;

B. Lt. Dallas Bookenberger, narcotics agent of the Terrebonne Parish Sheriff's Narcotics Strike Force;

C. Agent Travis Sanford, narcotics agent of the Terrebonne Parish Sherriff's Narcotics Strike Force;

D. Agent Joseph Renfro, narcotics agent of the Terrebonne Parish Sherriff's Narcotics Strike Force.

2.

Defendants are justly and truly indebted unto petitioners for the following:

3.

On or about July 15, 2015, Lt. Dallas Bookenberger executed an "Affidavit for Search Warrant" which was presented to Judge David Arceneaux, a State District Court Judge of Terrebonne Parish, Louisiana. The material "facts" set forth in the affidavit regarding criminal culpability of petitioners were untrue, wildly speculative, or made with reckless disregard for the truth. Petitioners allege, on information and belief, that agents Travis Sanford and Joseph Renfro assisted Lt. Bookenberger in drafting and presenting this affidavit to the judge.

4.

In the 13- page Affidavit, Lt. Bookenberger alleges a multi-year course of conduct by petitioner, Abelardo Avilex Carbajal, involving large scale distribution of cocaine and marijuana in Terrebonne, Lafourche and Assumption Parishes.

5.

The "facts" alleged in the Affidavit of Lt. Bookenberger which relate to Mr. Carbajal's alleged drug activities and to whether there was probable cause to issue a search warrant for Mr. Carbajal and his residence were all knowingly untrue or made with reckless disregard for the truth.

6.

However, on the basis of Lt. Bookenberger's Affidavit, Judge Arceneaux signed a search warrant on July 15, 2015 authorizing search of Mr. Carbajal's residence at 3007 Bayou Dularge Road, Theriot, Louisiana, Terrebonne Parish, 70397, all related structures, all vehicles, all vessels on the premises and adjacent thereto on the bayouside of Bayou Dularge, all personal belongings, all storage, garage, outbuildings and locked containers and curtilage located at the residence for the purpose of seizing all controlled dangerous substances, communication records, weapons, books, records, receipts, notes and ledgers related to the ordering, purchasing and distribution of controlled substances; all bank statements, money orders and cashier checks, receipts, pass books, bank checks and other items showing concealment of assets; all financial proceeds of dealing in narcotics; photographs, in particular, photographs of co-conspirators, assets and/or controlled substances; papers showing occupants of the residence or ownership of the premises, including utilities and telephone bills, cancelled envelopes and safety deposit box keys; electronic equipment like computers, phone answering machines, photographs, video tapes, undeveloped film and otherwise which may show co-conspirators, assets or controlled dangerous substances, address and/or telephone books, Rolodexes, and any papers reflecting the names, addresses, telephone numbers, pager numbers, fax numbers or tel-tex numbers of co-conspirators, source of supply,

customers financial institutions and other individuals or businesses with whom a financial relationship exists.

7.

On July 16, 2015, on the basis of the search warrant, which itself was based on a materially false affidavit, 33 agents from the Terrebonne Narcotics Task Force, the Terrebonne Parish Sheriff's Office, the Department of Homeland Security, United States Custom Service and Louisiana State Police; raided the residence of Mr. Carbajal at approximately 5:09 a.m.

8.

The agents ripped open the door to the Carbajal residence as all occupants inside were still asleep. The agents burst into the bedroom of Abelardo and Santa Carbajal, threw both of them onto the floor and handcuffed them behind their backs. They also handcuffed Mr. Carbajal's son, Max, who was living at the house. Requests by Mr. Carbajal that the agents provide some type of cover or quilt for his wife lying naked on the floor were ignored.

9.

The agents proceeded to search the premises pulling paneling off the walls and prying into every piece of furniture and every crevice in the house. In the bedroom, agents pulled out every drawer and threw contents onto the floor and bed.

10.

The search lasted for approximately two hours and 36 minutes as the strike force agents searched the residence and the outbuilding occupied by a relative; rummaged through all but one of the vehicles on the property; and searched all of the oyster vessels owned by Abelardo Carbajal, docked along the bayouside of Bayou Dularge adjacent to

his residence. Agents further went down Bayou Dularge and searched the oyster vessel of Lorenzo and Sanita Aguilar, Mr. Carbajal's daughter and son-in-law.

11.

Agents found nothing illegal during their search of the Carbajal residence, vehicle, boats or premises. The agents seized 15 legal items, including pistols legally owned by Mr. Carbajal; various paperwork related to his oyster business; various ammunition; various cell phones; a check book ledger; miscellaneous paperwork; $207.50 in currency located in the master bedroom and $1,005 in currency located in Mr. Carbajal's wallet on the kitchen table; and, finally, a purse containing rooster fighting items. None of the items seized was illegal.

12.

Also entered into evidence by the defendants were two items allegedly seized from a trash can located in front of the Carbajal residence during what the agents call "trash pulls". Whose trash can they emptied and how they determined it was Mr. Carbajal's is not revealed in the affidavit. One trash pull was conducted on July 7, 2015 at 4:31 a.m. when Agents Bookenberger, Renfro and Sanford allegedly emptied one of the trash cans located near the front of the Carbajal residence into the Agents' task force vehicle. At narcotics headquarters, a search of this trash allegedly revealed what agents described as "white plastic packaging wrapped with gray duct tape. The packaging contained cocaine residue and appeared to be from a kilo of cocaine," their report alleges. Lt. Bookenberger claims he tested the "suspected cocaine" with an NIK field test kit and received a presumptive positive result indicating the presence of cocaine content.

13.

The second trash pull was conducted on July 14, 2015 by the same three agents using the same modus operandi. In this search, they allegedly "located marijuana shake throughout" the garbage. The alleged marijuana weighed .34 grams ( about 1/3 of a gram) and allegedly tested positive for marijuana by Lt. Bookenberger using an NIK field test kit which showed a presumptive result of THC.

14.

While the search and partial destruction of the Carbajal residence and other property yielded nothing illegal, on the basis of Lt. Bookenberger's affidavit, arrest warrants for Mr. Carbajal were signed and immediately executed. Mr. Carbajal was brought to the Terrebonne Parish Jail run by the Sheriff's Office in Ashland, Louisiana, and charged with possession with intent to distribute cocaine and marijuana, and possession of drug paraphernalia. Mr. Carbajal's bond was set at $350,000. The bail for this size of bond was $42,000 which was posted for Mr. Carbajal by a loan from Mr. Toby Voisin, who allows Mr. Carbajal to fish on his oyster leases and to whom Mr. Carbajal has dealt in oysters for the past thirty (30) years.

15.

The damages to the Carbajal residence and other property are estimated to be about $10,000. Mr. Carbajal's cash money that was seized was forfeited under the state forfeiture statute and is no longer available to Mr. Carbajal and represents another loss in this fiasco.

16.

Neither the plastic wrapper allegedly containing presumptive cocaine nor the .34 grams of marijuana shake were sent to the State Police lab for confirmation of the NIK

field test results. In charging a man with possession with intent to distribute these drugs without even so much as a confirmation test to provide competent evidence of what they are indicates bad faith on the part of all the defendants involved.

17.

The search warrant affidavit signed by Lt. Bookenberger was false in so many respects as to indicate bad faith and ill intent by agents of the narcotics strike force to secure a search warrant and arrest warrants against an innocent man and his family. When the false and wildly speculative content is removed from Lt. Bookenberger's affidavit, the remaining parts do not set forth probable cause to support issuance of a search and/or arrest warrants.

18.

Among the false statements and implications presented in Lt. Bookenberger's affidavit are the following:

    a.    The entire effort to connect Mr. Carbajal to an Assumption Parish drug operation dating back to 2013 is entirely false as it alleges Mr. Carbajal to be a seller of cocaine to Mr. Tommy Thompson. It is false in attempting to label Mr. Carbajal as "El Chapo." First of all, in 2013 the name "El Chapo" was virtually unknown to the American public, including presumably the narcotics agents who were involved in the alleged background for Bookenberger's affidavit. Petitioners assert that it was not until the arrest and spectacular escape of Mexican Drug Cartel Kingpin Joaquin "El Chapo" Guzman in mid-2015 that the name 'El Chapo" became household words in the United States. The affidavit's frequent quotation of a "source of information" (SOI) is undermined by the fact that it does not identify

    this alleged source as a reliable source who had provided information previously and nor does it allege that this unnamed SOI identified Mr. Carbajal directly as a person named "El Chapo." Further, Mr. Carbajal's nickname on the bayou where he fishes oysters is "Lalo" and not "El Chapo."

b.  It is patently speculative and false to attempt to tie Mr. Carbajal to narcotics which washed up on Raccoon Island in 2013, purportedly labeled with a scorpion emblem. But this is what Bookenberger attempts to do in his affidavit. (See page 5 of 13).

c.  Lt. Bookenberger's attempt to connect Mr. Carbajal to a Hispanic female named de la Rosa, both as Mexican drug cartel members living in the Theriot/Dularge area, is entirely ludicrous and false. Mr. Carbajal does not know a Hispanic female named de la Rosa and Mr. Carbajal is certainly not a member of any Mexican drug cartel. To this date, Mr. Carbajal does not know who the de la Rosa woman referred to in Bookenberger's affidavit is.

d.  It is equally ludicrous for Lt. Bookenberger to allege that Mr. Carbajal frequented Hispanic bars on New Orleans Boulevard and the Music Cove on Howard Avenue in Houma. Mr. Carbajal has never been to a place called the Music Cove; and he and his wife together have gone perhaps twice to any bars. To state that he "frequented" any bar is just a lie.

e.  Lt. Bookenberger falsely alleges that the mysterious Ms. de la Rosa and Mr. Carbajal controlled several residences in Theriot/Dularge that housed large amounts of U.S. Currency, cocaine and marijuana. This is pure false

and not a shred of evidence was ever produced to support this allegation. In truth and in fact, Mr. Carbajal owns one house---the one the agents busted into and searched on July 16, 2015. He neither owns, leases, possesses nor controls any other residences, buildings, business structures or other such property.

f. Lt. Bookenberger's next non-sequential attempt to somehow link Mr. Carbajal to a Susan de la Rosa comes from an alleged narcotics tip line anonymous source who presented information set forth on page 6 of 13 of Lt. Bookenberger's affidavit. Again, the affidavit significantly fails to state this anonymous caller was a reliable source or had provided reliable information in the past. In this case, this informant did not even name Mr. Carbajal but Bookenberger nonetheless attempts to link Mr. Carbajal with Ms. de la Rosa by stating Ms. de la Rosa has connections with a "fisherman" in the Dularge/Theriot area, without identifying Mr. Carbajal by name.

g. The next falsity in Lt. Bookenberger's affidavit concerns another anonymous narcotics tip line informant who, once again, is not identified as providing reliable information that has been used in the past. This alleged informant called the Strike Force tip line on June 2, 2015 about an oyster fisherman in Dularge and Theriot involved in trafficking cocaine and marijuana and a "family operated organization (Carbajal's) whom lives in a large elevated house at the end of Theriot, Louisiana who owns many oyster boats operated out of Theriot" and who provided no further

information than this one call to the narcotics tip line, according to Lt. Bookenberger. (Page 6 of 13 Bookenberger Affidavit).

19.

Lt. Bookenberger then sets forth in bold face type a series of statements regarding "inquiries" into various websites which show "hits for Mr. Carbajal," including a "criminal records hit in Armms," without stating what type of criminal record hit was obtained; another "criminal records hit in Armms" which again does not state what type of criminal records hit was allegedly obtained; "booking information in Think Stream" for Abbiardo E. Carbajal, a person with a different name and date of birth than Mr. Carbajal; again no showing of what this booking information is; and finally, "drivers' license information in Think Stream" which does not state what type of information was found in this website.

20.

The Bookenberger affidavit then goes on to reveal 5 surveillance visits to Mr. Carbajal's residence when the agents discovered various legally owned vehicles at the residence. No illegal activity is described. (Pages 7-8 of 13 of Lt. Bookenberger's affidavit).

21.

The affidavit then goes on to relate the facts of the alleged "trash pulls" that have been set forth previously in this Complaint.

22.

The affidavit later spends approximately two pages listing the boats lined up along the bayou side near Mr. Carbajal's residence. All of the boats are legal and used in Mr. Carbajal's oyster operations.

23.

Finally on pages 12 and 13 of the affidavit, Lt. Bookenberger lists in alphabetical paragraphs the alleged facts known to him and then his pure speculation on how some of these facts involve any type of drug dealing by Mr. Carbajal. However, on the bases of Lt. Bookenberger's unconfirmed and wild suspicions, a district judge signed the search warrant which authorized the ugly search of the Carbajal residence and the arrest of Mr. Carbajal, costing him substantial out of pocket amounts shown previously.

24.

Following his arrest, Mr. Carbajal moved for a preliminary examination which was conducted in front of Judge George Larke in the 32nd Judicial District Court for Terrebonne Parish on October 8, 2015. Following the presentation of the State's efforts to show probable cause, Judge Larke dismissed the entire case against Mr. Carbajal, labeling it as one of the weakest he had ever seen and ordered the GPS bracelet to be removed from Mr. Carbajal's ankle. Neither the Sheriff nor the narcotics drug force agents have made any effort to provide recompense to Mr. Carbajal for the bad faith mistakes and operations they conducted that led to the illegal arrest of Mr. Carbajal and to his extreme mental anguish and embarrassment.

25.

The criminal proceeding against Mr. Carbajal came to a conclusion after the Preliminary Examination ruling in his favor when he moved for the defendants to disclose the names of their alleged confidential informants. The defendants refused to do this, resulting in the prosecutor fully dismissing the criminal case. Petitioners doubt the existence of these alleged informants. Petitioners know that the "facts" attributed to these informants are false.

26.

Petitioner alleges that the defendant narcotics agents misled the prosecutor to initially file the charges against Mr. Carbajal by the same false affidavit that they used to obtain the search and arrest warrants.

27.

After his arrest, Mr. Carbajal voluntarily submitted to a polygraph examination by Mr. Neil Rucker, a recognized polygraph examiner from New Orleans. He was found to be completely truthful on every statement he made regarding the falsity of the allegations against him.

28.

As a result of the unwarranted and illegal actions of the strike force officers through the Sheriff's Office, Mr. Carbajal has suffered the following damages:

    a. Extreme mental anguish, mental pain and suffering, embarrassment, humiliation, sleeping difficulties and loss of enjoyment of life;

    b. Physical pain and suffering;

    c. Loss of earnings and earning capacity;

    d. Loss of his bail bond money;

    e. Destruction of parts of his residence;

    f. Seizure of his property, money and business records;

    g. Loss of consortium with his wife;

    h. Attorney's fees and other costs of defense of the criminals actions;

    i. Attorney's fees for prosecuting this action.

29.

As a result of the illegal activities of the narcotics strike force officers through the Sheriff's office, Mrs. Santa Carbajal has suffered the following damages:

a. Humiliation, disgrace and bruising at the hands of the strike force agents;

b. Physical pain and suffering;

c. Destruction of parts of her residence;

d. Loss of the bail bond money that was loaned to get her husband out of jail;

e. Mental anguish, grief, fear, embarrassment and inability to sleep;

f. Loss of consortium with her husband;

g. Attorney's fees.

30.

As a result of the illegal activities of the narcotics strike force officers through the Sheriff's office, Max Carbajal has suffered the following damages:

a. Extreme mental anguish, mental pain and suffering, embarrassment, and loss of enjoyment of life;

b. Physical pain and suffering;

c. Attorney's fees.

31.

The cause of the damages to Abelardo, Santa, and Max Carbajal was the unconstitutional conduct of Lt. Bookenberger, Agent Sanford, and Agent Renfro, through their positions with the Terrebonne Parish Sheriff's Office, consisting of the following, non-exclusive particulars:

1. Confecting a materially false affidavit which led to the issuance of improper search and arrest warrants in this case;

2.  Intentionally misleading a member of the judiciary concerning matters which were alleged to be fact but were not;

3.  Conducting a search in such a manner as to result in the serious damage to a man's house, his cars and boats;

4.  Making false allegations of criminal activities against Mr. Carbajal which led to his arrest and imprisonment;

5.  Invading the Carbajal residence without due process, and illegally arresting Mr. Carbajal.

32.

Petitioners request and pray for trial by jury.

WHEREFORE, petitioners, Abelardo Avilex Carbajal, Santa D. Carbajal, and Max Carbajal, pray that this petition with appropriate citations be served upon defendants Jerry Larpenter as Sheriff of Terrebonne Parish; Lt. Dallas Bookenberger, Narcotics Strike Force Agent Terrebonne Parish; Agent Travis Sanford of Terrebonne Parish Narcotics Strike Force; and Agent Joseph Renfro of Terrebonne Parish Narcotics Strike Force; and that, after all due proceedings, there be judgment in favor of Mr. Carbajal against the defendants, in solido, for $750,000; and there be judgment in favor of Mrs. Carbajal against the defendants for $500, 000; and there be judgment in favor of Max Carbajal against the defendants for $250,000; together with legal interest as provided by law, attorney fees, and any and all other damages which are reasonable in the premises.

Respectfully submitted,

KOPFLER & HERMANN

_____
JERRY L. HERMANN, Bar #6823
7910 Main Street, Suite 400
P.O. Box 3760
Houma, Louisiana 70361
Telephone: (985) 851-3311
Fax: (985) 851-4521
Attorney for ABELARDO CARBAJAL,
SANTA CARBAJAL, and MAX CARBAJAL


**PLEASE SERVE:**

Terrebonne Parish Sheriff, Jerry Larpenter
Through the Terrebonne Parish Sheriff's Office
7856 Main Street
Courthouse Annex, Ste. 121
Houma, LA 70360

Terrebonne Parish Sheriff Narcotics
Agent, Dallas Bookenberger
Through the Terrebonne Parish Sheriff's Office
7856 Main Street
Courthouse Annex, Ste. 121
Houma, LA 70360

Terrebonne Parish Sheriff Narcotics
Agent, Travis Sanford
Through the Terrebonne Parish Sheriff's Office
7856 Main Street
Courthouse Annex, Ste. 121
Houma, LA 70360

Terrebonne Parish Sheriff Narcotics
Agent, Joseph Renfro
Through the Terrebonne Parish Sheriff's Office
7856 Main Street
Courthouse Annex, Ste. 121
Houma, LA 70360