# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ABELARDO AVILEX CARBAJAL, ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **No. 16-12870** |
| | * | |
| **JERRY LARPENTER et al** | * | **SECTION "L" (5)** |

## ORDER AND REASONS

Before the Court is Defendants Dallas Bookenberger's and Joseph Renfro's Motion to Dismiss. R. Doc. 9. Plaintiffs Abelardo Avilex Carbajal, Santa D. Carbajal, and Max Carbajal have filed an opposition to the Motion. R. Doc. 16. Defendants timely reply. R. Doc. 21. Having reviewed the parties' arguments and the applicable law, the Court now issues this Order and Reasons.

**I.    BACKGROUND**

Abelardo Avilex Carbajal ("Mr. Carbajal"), Santa D. Carbajal ("Mrs. Carbajal"), and Max Carbajal ("Max" and together, "Plaintiffs") have filed a 42 U.S.C. § 1983 claim alleging injuries sustained during an action of alleged police misconduct. Plaintiffs claim that Defendants Jerry Larpenter, Sheriff of Terrebonne Parish ("Larpenter"), Dallas Bookenberger, a narcotics agent of Terrebonne Parish Sheriff's Narcotics Strike Force ("Bookenberger"), Travis Sanford, a narcotics agent of Terrebonne Parish Sheriff's Narcotics Strike Force ("Sanford"), and Joseph Renfro, a narcotics agent of Terrebonne Parish Sherriff's Narcotics Strike Force ("Renfro" and together, "Defendants") violated their civil rights during the preparation and execution of a search warrant on July 16, 2015. R. Doc. 1 at 1-4.

The events in question began when agents Bookenberger, Renfro, and Sanford allegedly conducted several "trash pulls," in which they emptied trashcans located in front of the Carbajal residence. *Id*. at 5. The first "trash pull," which occurred on July 7, 2015 at 4:31 a.m., allegedly yielded white plastic packaging wrapped with grey duct tape that agents tested with an NIK field test kit. The packaging tested positive for cocaine residue. *Id*. at 5. The second "trash pull" was conducted by the same three agents on July 14, 2015, and allegedly yielded "marijuana shake" weighing .34 grams. Agents again used an NIK field test kit to test the substance; the test showed a presumptive result of THC. *Id*. at 5-6.

Plaintiffs claim that Bookenberger, assisted by Sanford and Renfro, then executed a 13-page affidavit for a search warrant alleging that Mr. Abelardo Carbajal engaged in a multi-year course of conduct involving the large scale distribution of cocaine and marijuana in Terrebonne, Lafourche, and Assumption Parishes. *Id*. at 2. Plaintiffs claim the information in that affidavit regarding their criminal culpability was "untrue, wildly speculative, or made with reckless disregard for the truth." *Id*.

On the basis of this affidavit, Judge David Arceneaux, a State District Court Judge of Terrebonne Parish, Louisiana, signed the search warrant dated July 15, 2016. *Id.* at 3. At approximately 5:09 a.m. on July 16, 2015, thirty-three agents from the Terrebonne Narcotics Task Force, the Terrebonne Parish Sheriff's Office, the Department of Homeland Security, the United States Customs Service, and the Louisiana State Police raided Plaintiffs' residence. *Id*. at 4. Plaintiffs allege that agents removed Mr. and Mrs. Carbajal from their bed, handcuffed them, and had them lay on the floor for the duration of the search; Mrs. Carbajal, who was not clothed, claims a request for a blanket was denied. *Id*. Agents also handcuffed Max. *Id*. Plaintiffs maintain that agents removed paneling from their walls and emptied every drawer in their home.

They further assert that the agents searched an outbuilding occupied by another relative, and searched all of their oyster vessels located down Bayou Dularge next to the home, including one owned by Mr. Carbajal's daughter and son-in-law. *Id*. at 4-5. Agents allegedly seized pistols legally owned by Mr. Carbajal, ammunition, paperwork, various cell phones, a purse, and $1,212.50. *Id*. at 5. This search lasted approximately 2.5 hours. *Id*. at 5.

These items were entered into evidence along with the items obtained through the earlier "trash pulls," though the affidavit did not detail from which trash cans this evidence came nor how the agents determined the items belonged to Mr. Carbajal. *Id*. The evidence was also never sent to the State Police lab for confirmation of the positive field test results. *Id*. at 6.

Although the agents' search of the Carbajal residence yielded nothing illegal, Mr. Carbajal was nonetheless arrested on an arrest warrant signed and executed on the basis of Agent Bookenberger's affidavit. *Id*. at 6. Mr. Carbajal was charged with possession with intent to distribute cocaine and marijuana, and possession of drug paraphernalia. *Id*. at 6. The Government's case against Mr. Carbajal was subsequently dismissed on October 8, 2015 by Judge George Larke in the 32nd Judicial District Court for Terrebonne Parish, who reportedly called the case "one of the weakest he had ever seen." *Id*. at 11.

Plaintiffs maintain that the search warrant affidavit signed by Agent Bookenberger was so false as to indicate bad faith and ill intent, and upon removal of the false and speculative content, the remainder does not set forth probable cause to support the issuance of a search or arrest warrant. *Id*. at 7. Plaintiffs allege that the bulk of the affidavit providing justification for the search and arrest warrant was based on information provided by purported confidential informants, the names of whom Defendants refused to disclose in state court. *Id*. at 7-12. Plaintiffs detail the purportedly false and unsubstantiated information. *Id*. Plaintiffs also allege

3

that Defendants misled the prosecutor into filing charges on the basis of a false affidavit. R. Doc. 1 at 7-12.

Plaintiffs' loss includes approximately $10,000 in damage to their home and property, as well as the cash seized and forfeited during the search. *Id*. at 6. Plaintiffs also assert other losses such as extreme mental anguish, humiliation, physical pain and suffering, among others. *Id*. at 12-14. In total, Plaintiffs seek $1,500,000 in damages. *Id*. at 14.

On May 11, 2017, the Court issued an order dismissing Defendants Larpenter and Sanford, as Plaintiffs agreed their claims against these Defendants were barred by qualified immunity. Additionally, the Court dismissed Plaintiffs' Fifth Amendment claims against all Defendants. *See* R. Doc. 24.

## II. PRESENT MOTION

Currently pending before the Court is Defendants Bookenberger and Renfro's Motion to Dismiss. R. Doc. 9. Plaintiffs responded in opposition. R. Doc. 16. After reviewing the parties motions and the applicable law, the Court instructed Plaintiffs to submit additional briefing addressing Defendants Bookenberger and Renfro's qualified immunity defense. R. Doc. 24. On June 9, 2017, Plaintiff submitted a supplemental opposition to Defendants' motion to dismiss. R. Doc. 25. The Court will discuss each in turn.

### a. Defendants Bookenberger and Renfro's Motion to Dismiss (R. Doc. 9-1)

Defendants Bookenberger and Renfro assert qualified immunity and argue that Plaintiffs' Fourth and Fourteenth Amendment claims must be dismissed.[1] They contend that Plaintiffs' state law claims must be dismissed on similar grounds, or in the alternative, that the Court should decline to extend supplemental jurisdiction over these claims.

---

[1] Defendants previously argued that Plaintiffs' Fifth Amendment claims should be dismissed. The

According to Defendants, Plaintiffs' Fourth and Fourteenth Amendment claims should be dismissed as they failed to meet the heightened pleading standard as required in a §1983 claim. R. Doc. 9-1 at 2-3. Defendants aver that this "heightened standard" requires Plaintiffs to support their claims with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." R. Doc. 9-1 at 3 (quoting *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (*en banc*)). Additionally, Defendants assert their qualified immunity, and allege that Plaintiffs must demonstrate that "every reasonable official would have understood that what [they were] doing violate[d]" Plaintiffs' rights in order to overcome that immunity. R. Doc. 9-1 at 4 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Defendants argue that when an arrest is based on a valid warrant, it is a legal arrest, unless an officer obtained a warrant based on facts he knew were false. R. Doc. 9-1 at 5. Here, Plaintiffs allege that the warrant was based on known false statements, but Defendants aver Plaintiffs have not provided any facts to support this assertion. R. Doc. 9-1 at 5-6. Additionally, Defendants contend that Plaintiffs do not list individual officers who fabricated these statements, or indicate why the evidence was invalid. R. Doc. 9-1 at 6.

Next, Defendants contend that Agent Renfro was not involved in preparing the affidavit which served as the basis for the warrant, and therefore cannot be held liable for any alleged misstatements in that affidavit. R. Doc. 9-1 at 11. According to Defendants, Plaintiffs have failed to allege a single fact which demonstrates Renfro was involved in the warrant application. R. Doc. 9-1 at 11.

Finally, Defendants argue that for the same reasons, Plaintiffs' state law claims should be dismissed, or in the alternative, the Court should decline to exercise supplemental jurisdiction

---

Court dismissed Plaintiffs' Fifth Amendment claims as to all Defendants on May 11, 2017.

5

over these claims. R. Doc. 9-1 at 12. Defendants cite to Fifth Circuit jurisprudence which indicates the Court has discretion to dismiss a plaintiff's state law claims against a police chief under Louisiana's Discretionary Immunity Statute. R. Doc. 9-1 at 12 (citing *See Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005)). In the alternative, Defendants aver that the Court should decline to extend supplemental jurisdiction over Plaintiffs' state law claims, as the general rule within the Fifth Circuit is to dismiss state claims when all federal claims have been dismissed before trial. R. Doc. 9-1 at 12. (citing *See Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999)).

b.  **Plaintiffs' Response (R. Docs. 16, 23, 25)**

Plaintiffs oppose Defendants' Bookenberger and Renfro's Motion and argue that they have pled sufficient facts to state viable claims against Defendants. R. 16 at 2. Plaintiffs contend that Defendants are not entitled to qualified immunity because the warrant affidavit included false statements, did not establish probable cause, and therefore was objectively unreasonable. R. Doc. 16 at 3 (citing *Malley*, 475 U.S. at 345-46). Plaintiffs explain that the officers are not protected by qualified immunity if they made statements in a warrant affidavit which they knew, or should have known were false, and the magistrate's finding of probable cause was based on these false statements. R. Doc. 16 at 4. Plaintiffs allege that Defendants "placed false information in their search and warrant application," which was the only basis for probable cause. R. Doc. 16 at 4. Thus, according to Plaintiffs, this prevents Defendants from asserting qualified immunity. R. Doc. 16 at 5. In the alternative, Plaintiffs argue that it is too early in the litigation to determine whether Defendants are entitled to qualified immunity. R. Doc. 16 at 5.

Next, Plaintiffs address Defendants' arguments regarding their Fourth and Fourteenth Amendment claims. Plaintiffs explain that government officials are liable for violating the

Fourth Amendment when they provide false information in a warrant affidavit if they knew the information was false, or acted in reckless disregard to its falsity and there was no probable cause without the false information. R. Doc. 16 at 6. According to Plaintiffs, they have pled sufficient facts to demonstrate that Defendants violated this standard. R. Doc. 16 at 6. Finally, Plaintiff argues Detective Renfro is not "absolved of his liability" just because his partner drafted the warrant affidavit. R. Doc. 16 at 7.

### c. Plaintiffs' Supplemental Response (R. Doc. 25)

Per the Court's instruction, Plaintiffs submitted an additional response, arguing that Defendants Bookenberger and Renfro should be denied qualified immunity, or in the alternative, that the Court should defer ruling on this issue in order to allow additional discovery. R. Doc. 25 at 1. Plaintiffs allege that Bookenberger executed an affidavit for a search warrant in July 2015; but the material facts supporting the affidavit were "untrue, wildly speculative, and made with reckless disregard for the truth." R. Doc. 25 at 1. According to Plaintiffs, Defendants are not covered by qualified immunity if the facts demonstrate that a "reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause." R. Doc. 25 at 3 (citing *Malley*, 475 U.S. at 345).

Plaintiffs state various facts which, if taken as true, demonstrate that Mr. Carbajal is not, and never has been, involved in any facet of the drug trade. R. Doc. 25 at 4. If Plaintiffs are able to prove these facts at trial, they would refute Agent Bookenberger's statements in the warrant affidavit. Further, Plaintiffs argue they should be allowed limited discovery to demonstrate that the statements made by confidential informants were false, and that the evidence obtained during various trash-pulls at the Defendant's home was fabricated. R. Doc. 25 at 5.

### III. LAW AND ANALYSIS

#### a. Motion to Dismiss Standard

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Generally, when evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court should not look past the pleadings.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The district court must construe facts in the light most favorable to the nonmoving party and must accept as true all factual allegations contained in the complaint. *Ashcroft*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

#### b. § 1983 Standard

United States Code Title 42, Section 1983 creates a cause of action for an individual whose constitutional rights are violated by a person acting under the color of state or federal law. The purpose of Section 1983 is to deter "state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). State actors may defend themselves

by claiming they have qualified immunity for their actions, as long as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

There is a heightened pleading standard for cases brought under 14 U.S.C. § 1983. "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). In discharging this burden the plaintiff must satisfy a two-prong test. *Id.* The plaintiff must allege that defendants committed a constitutional violation under current law, and that defendants actions were objectively unreasonable "in light of the law that was clearly established at the time of the actions complained of." *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). For the law to be clearly established at the time of the action, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (en banc) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court is within its discretion to decide which prong of the two-prong test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009). The Court also has discretion to insist that the plaintiff file a reply that is tailored to an answer which pleads the defense of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995).

    c.    **Plaintiff's Claim that the Search Warrant was Invalid**

The Fourth Amendment guarantees the right of all people to be free from unreasonable searches. *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015). A police search and seizure inside the home without a warrant is presumptively unreasonable. *Brigham City, Utah v. Stuart*, 547

U.S. 398, 403 (2006). However, a valid search warrant, issued by a neutral magistrate, establishes probable cause for a search. *See Michigan v. Summers*, 452 U.S. 692, 703-04 (1981). To obtain such a warrant, a police officer must submit an affidavit containing sufficient facts which provide the independent magistrate with a basis for determining if probable cause exists. *See Illinois v. Gates*, 462 U.S. 213, 219 (1983); *Kohler v. Englade,* 470 F.3d 1104, 1109 (5th Cir. 2006).

However, when an officer knowingly and intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application he may have violated the accuseds' Fourth Amendment rights. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "In order to constitute a constitutional violation sufficient to overcome the qualified immunity of an arresting officer, the material misstatements and omissions in the warrant affidavit must be of 'such character that no reasonable official would have submitted it to a magistrate.'" *Morin v. Caire*, 77 F.3d 116, 122 (5th Cir. 1996) (quoting *Hale v. Fish*, 899 F.2d 390, 402 (5th Cir. 1990)).

For Plaintiffs to defeat Defendants' qualified immunity defense they must allege facts, which taken as true, demonstrate that Agent Bookenberger committed a constitutional violation, and that his actions were objectively unreasonable under the law at the time of the relevant conduct. *Atteberry*, 430 F.3d at 253. Unlike the notice pleading standard in Rule 8, the heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." *Id.*; *see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995).

In their pleadings, Plaintiffs allege that Agent Bookenberger set forth a number of false, unsupported statements in his affidavit in support of a search warrant. R. Doc. 1 at 7-9. Specifically, Plaintiffs contend that Agent Bookenberger demonstrated a reckless disregard for

the truth by stating that Mr. Carbajal's nickname was "El Chapo," a known drug trafficker, and that he frequented bars which were known for their drug trade. According to Plaintiffs, it is common knowledge that Mr. Carbajal's nickname is Lalo, and he and his wife have only been to area bars a few times in their lifetime. Additionally, Agent Bookenberger stated in the warrant affidavit that Mr. Carbajal controlled many houses in the Houma area. He did not verify this information, despite the fact a public records search could have confirmed or undermined this alleged fact.

Additionally, Agent Bookenberger relied on tips and information from anonymous sources, but did not identify his sources in the affidavit, or provide any indication as to the reliability of these tips. In fact, when Agent Bookenberger conducted surveillance based on information provided by these anonymous sources, he did not discover any criminal activity. At the very least, this should have spurred additional investigation and verification before submitting this warrant—based largely on unverified, anonymous tips—to a magistrate. *See United States v. Mays*, 466 F.3d 335, 343–44 (5th Cir. 2006) (listing factors for determining whether an anonymous tip is reliable under the totality of the circumstances). Thus, the Court finds there are sufficient allegations, if proven, to support a conclusion that Agent Bookenberger was objectively unreasonable in submitting the search warrant to the magistrate without conducting additional investigation to verify the information.

To further establish a violation, the Court must find that Bookenberger's false allegations in the warrant were pertinent to the issue of probable cause. Probable cause for searches, seizures, and arrests depends on "the totality of facts and circumstances within a police officer's knowledge at the moment of arrest [that] are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Wadley,* 59 F.3d 510,

512 (5th Cir. 1995). The reasonable person standard depends on the expertise and experience of law enforcement officials. *Garcia,* 179 F.3d at 268. Finally, probable cause does not need to rise to the level sufficient to support a conviction, although it must be more than a "bare suspicion." *Id.* at 269. Rather, probable cause has been held to mean a "fair probability" that a crime has been committed. *Id.* That fair probability, in turn, need not reach the fifty percent mark. *Id.*

First, the Court must determine what information Agent Bookenberger included in the affidavit was false, or included with reckless disregard to its falsity. As neither party has submitted a copy of the warrant affidavit, the Court is limited to evaluating the statements the parties indicate were included on the warrant affidavit. The Court concludes that there is sufficient prima facie evidence that Agent Bookenberger was reckless in submitting information provided by anonymous sources without conducting any follow-up investigation, or demonstrating the informant's reliability. Thus, this information cannot be considered when evaluating whether the affidavit provided sufficient information for a finding of probable cause.

After removing this information from the affidavit, the following facts remain: (1) searches on Armms revealed criminal "hits" for an individual with the same last name, but different first name and birthdate than Mr. Carbajal; (2) there were oyster boats lined up in the bayou next to the Carbajal home; (3) agents conducted surveillance of the home on five occasions, but no criminal activity was observed; (4) two trash pulls revealed cocaine residue and marijuana shake in publically accessible trash cans outside the Carbajal home. *See* R. Doc. 1.

The Court must determine whether this evidence would have been sufficient to find that there is a "fair probability" that Mr. Carbajal had committed a crime. District courts within this district have found probable cause to issue a search warrant when evidence from a trash pull is submitted along other information—such as a defendant's lengthy criminal history, relevant spot

surveillance, interviews during a "knock and talk," and other physical evidence. *See, e.g.*, *Johnson v. Dir., TDCJ-CID*, No. 11-346, 2014 WL 1292454, at *2 (E.D. Tex. Mar. 28, 2014); *United States v. Gereb*, 547 F. Supp. 2d 658, 660 (W.D. Tex. 2008). Here, there is no such additional evidence. Agent Bookenberger conducted surveillance of Mr. Carbajal's home on five occasions, but did not note any suspicious activity. The fact that someone with his last name has a criminal history is insufficient to establish probable cause that Mr. Carbajal had also committed a crime. Finally, Mr. Carbajal has been an oyster fisherman for decades; it would be abnormal if he did not have oyster vessels parked along the bayou near his home. The contents out of publically accessible trash cans alone is not sufficient to justify the agent's actions. This evidence does not establish probable case.

At the very least, Agent Bookenberger was reckless in preparing a warrant with such obvious flaws; at the most, he misrepresented the truth to the judicial officer who signed the search warrant. In any event, the Court finds that Plaintiffs have alleged sufficient facts, which if proven at trial, would demonstrate that Defendant Bookenberger violated their constitutional rights by recklessly or falsely including inaccurate information relevant to a finding of probable cause in an application for a search warrant.

The second step of the test is to determine if the constitutional violation alleged was "clearly established" at the time it was committed. *Anderson,* 483 U.S. at 639. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . . In the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640. This Court finds that plaintiffs have easily established this prong of the test. The Supreme Court's opinion in *Anderson,* as well as the Fifth Circuit's decisions in *Hart* and *Spiller v. City of Texas City,* 130 F.2d 162 (5th Cir.1997), all establish that violations of the Fourth

Amendment for unlawful searches and seizure are proper subjects for litigation under Section 1983. A reasonable police officer has sufficient information from these cases to know that his or her intentional inclusion of false or misleading facts in an application for a search warrant will subject that officer to civil liability. All that is required is that plaintiffs set forth enough facts in their complaints to establish the cause of action and clear the initial hurdle posed by qualified immunity. As noted above, Plaintiffs' complaint and supplemental response achieves this goal, and therefore their claim for an illegal search may proceed against Agent Bookenberger.

Plaintiffs also allege that Agent Renfro assisted Agent Bookenberger in preparing the warrant affidavit. R. Doc. 1 at 2. An officer who did not actually participate in the drafting of an affidavit may be denied qualified immunity if they provide false, material information for use in the affidavit. *Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997). However, to survive a motion to dismiss, the complaint must contain sufficient factual material that, when accepted as true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs have made no factual allegations that Agent Renfro assisted in preparing the affidavit. Even when construed in the light most favorable to the nonmoving party, Plaintiffs' allegations, based solely on information and belief, that Agent Renfro assisted Agent Bookenberger in drafting the warrant affidavit are insufficient to overcome Agent Renfro's assertion of the qualified immunity defense. R. Doc. 1 at 2.

    d.    **Plaintiffs' Claims of Illegal Arrest**

Plaintiffs allege that Defendants wrongfully arrested Mr. Carbajal following their search of his home. R. Doc. 1 at 6. The Fourth Amendment provides protection from an unlawful detention at the hands of the authorities. An officer whose request for a warrant allegedly caused

an unconstitutional arrest is not protected by qualified immunity, even where the warrant was issued by a neutral magistrate, if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "In order to constitute a constitutional violation sufficient to overcome the qualified immunity of an arresting officer, the material misstatements and omissions in the warrant affidavit must be of 'such character that no reasonable official would have submitted it to a magistrate.'" *Morin v. Caire*, 77 F.3d 116, 122 (5th Cir. 1996) (quoting *Hale v. Fish*, 899 F.2d 390, 402 (5th Cir. 1990)).

Ordinarily, an arrest made under the authority of a valid warrant is a true and valid arrest. *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). However, when the officer accused of false arrest is the officer who obtained the warrant, the Court must examine the warrant, as we did above. *Mendenhall v. Riser*, 213 F.3d 226, 232 (5th Cir. 2000) (discussing arrest warrants); *see Pardue v. Jackson County, Mississippi*, No. 14-290, 2016 WL 3024153 at \*2 (May 25, 2016 S.D. Miss) (equating search warrants and arrest warrants in the context of examining Section 1983 claims). If an officer is found to have intentionally or recklessly included false information in the affidavit, the court must exclude the false information and determine if the requisite probable cause existed based on the remaining portion of the affidavit. *United States v. Alvarez,* 127 F.3d 372, 374 (5th Cir. 1997).

Here, as with the search warrant, the Court must determine whether the facts regarding the trash pull, criminal "hits" for someone with the last name "Carbajal," and oyster boats were sufficient to establish probable cause to support the arrest warrant. "[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.' " *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir. 1983) (quoting *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)). At the

time of the arrest warrant, Agent Bookenberger knew that on two occasions, trace quantities of drugs and drug packaging were found in public trash cans located outside of Mr. Carbajal's home. He knew that additional surveillance of Plaintiffs' property had not revealed any suspicious activity, drug related or otherwise. He knew that a random search of the entire home, as well as Mr. Carbajal's oyster vessels had not revealed any additional evidence—much less evidence which linked Mr. Carbajal to a crime. Therefore, the Court finds that there was insufficient evidence to find probable cause that Mr. Carbajal had committed a crime.

The second step of the test is to determine if the constitutional violation alleged was "clearly established" at the time it was committed. *Anderson,* 483 U.S. at 639. Again, the Court finds that Plaintiffs have established the second prong. Supreme Court and Fifth Circuit case law is clear that Fourth Amendment violations are proper subjects for Section 1983 claims. *See id.*, *Hart v. O'Brien*, 127 F.3d 424, 448, *Spiller v. City of Texas City,* 130 F.2d 162 (5th Cir. 1997). A reasonable police officer has sufficient information from these cases to know that including false or misleading facts in an application for an arrest warrant will subject that officer to civil liability. All that is required is that plaintiffs set forth enough facts in their complaints to establish the cause of action and clear the initial hurdle posed by qualified immunity. As noted above, Plaintiffs have met this standard, and their claims against Agent Bookenberger for illegal arrest survive the motion to dismiss.

## IV.   CONCLUSION

As discuss in full above, Plaintiffs have alleged facts to overcome Agent Bookenberger's qualified immunity defense. However, they have not alleged facts which defeat Agent Renfro's claim for qualified immunity. Therefore,

**IT IS ORDERED** that Defendant's Motion to Dismiss, R. Doc. 9, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims against Agent Renfro are hereby dismissed. However, Plaintiffs' claims against Agent Bookenberger survive the motion to dismiss.

New Orleans, Louisiana, this 6th day of September, 2017.

**ELDON E. FALLON**
United States District Judge